UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
WEILY L. BOKEL,

         Petitioner,    **MEMORANDUM and ORDER**

    -against-         06-CV-2849 (SLT)(LB)

NYPD PROPERTY CLERK DIVISION,
ITS SUCCESSORS AND ASSIGNS, AND
THE UNITED STATES OF AMERICA,

         Respondent.
----------------------------------------------------------------x
**TOWNES, United States District Judge:**

  Following the conclusion of federal criminal proceedings against her, petitioner Weily L. Bokel filed a motion pursuant to Rule 41(e) – now Rule 41(g)[1] – of the Federal Rules of Criminal Procedure, seeking to recover property which was seized by the police following her arrest.  By order dated June 9, 2006, Magistrate Judge Lois Bloom, citing *Mora v. United States*, 955 F.2d 156, 158 (2d Cir. 1992), and progeny, construed the motion as a civil complaint and directed respondent United States (the "Government") to respond.  The Government did so by filing a letter, accompanied by a Rule 56.2 Statement, which requests that this action be dismissed but which expressly states that it is not "a motion pursuant to Rule 12 or Rule 56 of the Federal Rules of Civil Procedure."  *See* Letter of AUSA Laura D. Mantell, dated Sept. 21, 2006 (the "Government's Letter") at 1, n. 1, and 4.  Petitioner subsequently cross-moved for judgment on the pleadings or, in the alternative, an order extending her time to conduct discovery.  For the reasons set forth below, both the Government's application and petitioner's

---

[1]In 2002, Rule 41 was "completely reorganized to make it easier to read and apply its key provisions."  *See* Advisory Committee Note to the 2002 Amendments.  Rule 41(e) was redesignated Rule 41(g), but the 2002 amendments made no substantive changes to Rule 41(e). To avoid confusion, this Court will refer to the rule by its current designation:  Rule 41(g).

motion are denied.

## BACKGROUND

On December 24, 2003, petitioner, a citizen of Brazil, abducted her young daughter, Rachel, in Virginia. One week later, petitioner was arrested at Kennedy Airport in Queens, New York, as she attempted to flee the country with the girl. *See* Declaration of Jenifer Adams (Ex A to the Government's Letter) at ¶¶ 1-2. At the time of her arrest, petitioner was in possession of six pieces of luggage and other property, some or all of which was seized by police. *Id.* at ¶ 3.

Although petitioner was arrested by the New York-New Jersey Port Authority Police Department ("PAPD"), and spent some time in the custody of the New York City Police Department ("NYPD"), petitioner was soon transferred to federal custody. On January 16, 2004, she appeared before Magistrate Judge Victor V. Pohorelsky and consented to removal to the West District of Virginia. *See United States v. Bokel*, No. 04-mj-00008 (VVP). There, in December 2004, petitioner was convicted of one count of attempted international parental kidnapping in violation of 18 U.S.C. §1204(a) and sentenced to 33 months' imprisonment. *See* Ex. C to the Government's Letter at 1, 2.[2]

On May 26, 2005, petitioner filed a "Motion for Return of Property" in the United States District Court for the Western District of Virginia, seeking the return of cash, jewelry and other items. In an effort to resolve the motion, District Judge Norman K. Moon had "conversations" with both the prosecutor and defense counsel in petitioner's criminal case, in which he "learned that the cash that was not garnished was already returned" to petitioner and that the remaining

---

[2]On direct appeal, the Fourth Circuit Court of Appeals vacated the sentence and remanded the case to the district court. *United States v. Bokel*, 185 Fed. Appx. 234, 2006 WL 1674490 (4th Cir. June 12, 2006). Petitioner was re-sentenced to one year and was released from the custody of the Federal Bureau of Prisons on October 24, 2006. *See* www.bop.gov. Petitioner is currently incarcerated in the Hampton Roads Regional Jail.

property "had been seized at New York's Kennedy Airport and was being held by the New York Police Department's Property Division." *Bokel v. United States*, No. 6:04-CR-70018, slip op. at 1 (W.D.Va. Sept. 19, 2005). On September 19, 2005, Judge Moon denied petitioner's motion, citing the then-superceded Rule 41(e) for the proposition that motions for the return of property could only be brought in the district in which the property was seized.

On May 10, 2006, petitioner filed a second "Motion for Return of Property," this time in the United States District Court for the Southern District of New York. That motion described in some detail thirteen items or groups of items which allegedly had been seized at Kennedy Airport, including a gold necklace with a jade pendant, two silver necklaces with sapphire pendants, petitioner's Brazilian identifications, various children's books and stuffed animals, some videotapes and her daughter's passports. The motion specifically alleged, based on Judge Moon's September 19, 2005, order, that these items were being held by the New York City Police Department's Property Division.

In light of the allegation that the property had been seized at Kennedy Airport, Chief Judge Michael B. Mukasey promptly transferred the action to this Court pursuant to 28 U.S.C. §§ 1391(b) and 1406(a). *See Bokel v. United States*, No. 06-CV-3535 (MBM), slip op. (S.D.N.Y. May 10, 2005). On June 9, 2006, Magistrate Judge Bloom granted petitioner's application to proceed *in forma pauperis* and, construing petitioner's submission as a civil action, directed the Government to respond. *See Bokel v. NYPD Prop. Clerk Div.*, No. 06-CV-2849 (SLT)(LB), slip op. at 1 (E.D.N.Y. June 9, 2006).

On September 21, 2006, the Government responded by filing a four-page letter and six exhibits, including two declarations and a letter from the NYPD's Legal Bureau. The Government's Letter asserts that "the United States has already returned a number of seized

3

items" to petitioner and her representatives, including some property which "fit the description of the items sought in the Motion." Government's Letter at 2. In addition, the letter alleges that some of the items sought are in possession of the United States District Court for the Western District of Virginia and the NYPD. Government's Letter at 2-3. However, with the exception of three of the items – the gold necklace with the jade pendant (which is allegedly in the possession of the NYPD) and petitioner's Brazilian identifications and her daughter's passports (which are allegedly in the possession of the district court) – the Government does not unequivocally state that any of the items returned or located are among the thirteen items or groups of items petitioner seeks. Rather, the Government only states that the items returned or located are "possibly" the items petitioner seeks. *Id.* at 2-3.

The Government asserts that it has no objection to returning all of the items it has located, with the exception of the daughter's passports. The Government's Letter, however, provides no information concerning who has custody of the girl or any legal discussion concerning the passports. Rather, the letter merely states that AUSA Mantell was "advised by [an AUSA involved in the prosecution of petitioner in Virginia] that the only person to whom the daughter's travel documents should be returned is her father." *Id.* at 3.

The letter also alleges that the Government has been "unable to locate" some of the items requested or "any record indicating that they had ever been seized." *Id.* at 3. In support of that allegation, the Government attaches the declarations of two law enforcement officers: Mark L. MacKizer, the FBI special agent who investigated the criminal case against petitioner, and Jenifer Adams, one of the PAPD detectives who arrested petitioner. As described in more detail in the discussion below, these declarations do not provide much detail and do not attach any vouchers, receipts, log entries or other documentary evidence. Nonetheless, the Government

4

implies that these declarations must be accepted as fact by arguing that the action "should be dismissed with prejudice." *Id.* at 4. In addition, although petitioner has requested only the return of the items and not monetary relief, the Government cites *Adeleke v. United States*, 355 F.3d 144 (2d Cir. 2004), for the proposition that it "cannot be held liable for damages with respect to property that 'for whatever reason . . . is not available for Rule 41(g) return.'" Government's Letter at 4 (citing *Adeleke*, 355 F.3d at 151).

Despite the fact that its letter requests dismissal of the action and was accompanied by a Rule 56.2 Statement, the Government expressly states that the letter is not a motion pursuant to Fed. R. Civ. P. 12 or 56. *See* Government's Letter at 1, n 1. Indeed, the Government's Letter ends by stating:

> In the event Your Honor finds that it is necessary for the United States to proceed by filing a motion pursuant to Rule 12 or, in the alternative, Rule 56 to dispose of this action, the United States respectfully reserves its rights to make such a motion.

*Id.* at 4.

Petitioner never directly responded to this letter. In October 2006, however, she filed a document entitled, "Motion for Judgment on the Pleading or Motion for Continuance to Obtain Further Testimony" ("Petitioner's Motion"). That motion describes the hardships which petitioner has faced as a result of the seizure of her property, including the loss of her home and job, and "prays that this court will . . . [m]aintain her original claim to provide relief to [sic] her losses." Petitioner's Motion at 4. In addition, this motion seeks an "extension of time" to conduct discovery, and attaches a three-page letter dated September 25, 2006, in which petitioner requests specific items and inquires about the procedures for conducting discovery.

**DISCUSSION**

Despite Magistrate Judge Bloom's Order of June 9, 2006, both parties' submissions evidence considerable confusion concerning the nature of this action. Although petitioner commenced this action by filing a "Motion for Return of Property" pursuant to Fed. R. Crim. Pro. 41(e), petitioner did not make this motion until after the criminal proceedings against her were concluded. Accordingly, as Magistrate Judge Bloom correctly notes, this motion must be construed as a civil complaint for equitable relief. *See*, *e.g.*, *Rufu v. United States*, 20 F.3d 63, 65 (2d Cir. 1994); *Mora*, 955 F.2d at 158.

Neither *Mora* nor any subsequent Second Circuit case suggests that the procedure to be followed in Rule 41(g) actions is different from the procedure applicable to any other civil action. Rule 12 of the Federal Rules of Civil Procedure provides that a defendant in a civil action must either answer or move to dismiss the pleading. Therefore, when Magistrate Judge Bloom directed the Government to "respond," it should have either served an answer or filed a formal motion to dismiss.[3]

Instead, the Government filed a letter which defies easy characterization. It does not purport to be an answer, and it expressly states that it is not a motion pursuant to Fed. R. Civ. P. 12 or 56. However, since the Government's Letter seeks to dismiss this action and expresses the Government's willingness to make a Rule 12 or Rule 56 motion, this Court will construe it as a pre-motion conference request pursuant to paragraph III.B of this Court's Individual Motion Practices.

---

[3]Prior to January 5, 2007, the Court's Individual Motion Practices did not require that parties in cases involving a *pro se* litigant file pre-motion conference requests.

That application is denied without prejudice. While the Assistant United States Attorney alleges that some items sought by the petitioner were never seized and that others were returned, the declarations attached to the Government's Letter are insufficient to establish those facts. "In cases in which whether the property was ever seized is in question, . . . the government bear[s] the burden of proving that it dealt with plaintiff's property in accordance with regulations prescribed in 41 C.F.R. § 128-50.101." *Sanchez-Butriago*, Nos. 00 Civ. 8820 (JFK), 89 CR 644-2 (JFK), 2003 WL 21649431, at *4 (S.D.N.Y. July 14, 2003) (internal quotations omitted) (quoting *Otonye v. United States*, 903 F.Supp. 357, 363 n. 8 (E.D.N.Y. 1995)). These regulations provide:

> Each bureau shall be responsible for establishing and maintaining inventory records of its seized personal property to ensure that:
>
> (a) The date the property was seized is recorded;
>
> (b) All of the property associated with a case is recorded together under the case name and number;
>
> (c) The location of storage of the property is recorded;
>
> (d) A well documented chain of custody is kept; and
>
> (e) All information in the inventory records is accurate and current.

Absent evidence that the Government has complied with these regulations, this Court cannot grant the Government's motion to dismiss the complaint. *See Sanchez-Butriago*, 2003 WL 21649431, at *5; *United States v. Cardona*, 897 F.Supp. 802, 804 (S.D.N.Y. 1995). Indeed, the Second Circuit has twice reversed district court orders dismissing motions to compel the return of seized property where the Government failed to adequately document compliance with

proper procedures. *See Mora*, 955 F.2d at 158; *Rufu*, 20 F.3d at 65. *Mora* is particularly similar to the case at bar. In *Mora*, as here, the plaintiff filed a Rule 41(g) motion following the conclusion of criminal proceedings and the Government responded with a letter advising the Court that DEA agents had reported to the Assistant United States Attorney handling the case that the property was no longer in possession of the Government. On the strength of this letter alone, the district court dismissed the action as moot.

On appeal, the government argued that, in light of its representation that the property was no longer in its possession, the district court "had to reject Mora's application." *Id.* at 158. The Second Circuit emphatically rejected this "self-serving argument," and reversed the district court's dismissal of the action. The Court noted that the government had failed to offer any evidence concerning the disposition of the property, stating:

> No receipts, log entries or other documentation – not even an affidavit – were presented to support the assertion that it no longer had possession of appellant's property. Further, the government's "representation" fails to account for all of the personalty, since the DEA special agent recalls giving only *various* of the items to Mora's relative. A finding of whether the government actually retains possession of Mora's property and, if not, what happened to it is a necessary predicate to deciding Mora's motion.

*Id.* at 158-59 (emphasis in original).

In this case – unlike *Mora* – the Government has provided declarations from two officers who had possession of the property. However, those declarations do little more than substantiate the Assistant United States Attorney's representations as to what these officers told her. For example, the Declaration of Jenifer Adams conclusorily states that the PAPD "has no record of having retained any property seized from Bokel other than cash and a metal chain with green stone." Government's Letter, Ex. A, ¶ 3. However, there is no documentary evidence

referenced in, or attached to, Adam's declaration to substantiate her representation.

Similarly, the Declaration of Mark L. MacKizer states that he returned "a number of items," including "items that fit the description of . . . property claimed by Bokel in her motion," and that "[n]either the FBI nor the U.S. Attorney's Office in the Western District of Virginia has in its possession any of the items fitting the description in Bokel's motion other than certain children's books." Government Letter, Ex. B, ¶¶ 2-3. MacKizer does not attach any receipts, log entries or any other documentation from which to make a determination as to what, if any of the property sought by petitioner, was actually returned. Indeed, based on the declaration, the Government cannot even say which of the items returned and/or located are among the thirteen items petitioner lists; the Government's Letter states only that some items were "possibly" the ones petitioner seeks. In addition, the MacKizer Declaration states that "certain items of claimed property . . . were introduced into evidence," *id.* at 3, but does not even specify what items – apart from the passports for petitioner's daughter – were introduced.

These unspecific and conclusory declarations are insufficient to provide a factual basis for determining what property has been returned, what property was never seized and what property has been lost. Rule 41(g) requires this Court to "receive evidence on any factual issue necessary to decide the motion." This Court cannot simply rely on representations made by the Government. *See Mora*, 955 F.2d at 158.

The Government implies that the factual inquiry into the whereabouts of petitioner's property is essentially a meaningless exercise because "the United States cannot be held liable for damages with respect to property that 'for whatever reason . . . is not available for Rule 41(g) return.'" Government's Letter at 4 (quoting *Adeleke*, 355 F.3d at 151). This Court cannot agree. *Adeleke* does *not* hold that the United States cannot be liable for damages with respect to seized

property that is lost by the Government. That case held only that "Rule 41(g), which simply provides for the return of seized property, does not waive the sovereign immunity of the United States with respect to actions for money damages relating to such property." *Adeleke*, 355 F.3d at 151. Prior to *Adeleke*, district courts – recognizing their obligations to construe *pro se* pleadings liberally, *see Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) – construed Rule 41(g) actions as seeking damages under the Tucker Act and the "Little Tucker Act," 28 U.S.C. §§ 1346(a)(2) and 1491; the Administrative Procedure Act, 5 U.S.C. § 702 (the "APA"); and/or the Federal Tort Claims Act, 28 U.S.C. § 2671 (the "FTCA"). *See Sanchez-Butriago v. United States*, 2003 WL 21649431, at *2 (quoting *Vasquez v. United States*, No. 94 Civ. 7580 (JFK), 1996 WL 692001, at *2 (S.D.N.Y. Dec. 3, 1996)). *Adeleke* rejected this practice, holding that while the court's equitable powers permitted courts to order the return of property pursuant to Rule 41(g) even after the conclusion of criminal proceedings, such equitable powers did not permit courts to disregard sovereign immunity and to "order the United States to pay money damages when, for whatever reason, property is not available for Rule 41(g) return." *Adeleke*, 355 F.3d at 151.

The *Adeleke* Court, however, held only that money damages are not recoverable upon a 41(g) motion. The Court itself addressed at length various statutory bases under which a plaintiff might arguably recover damages for lost property, including the Tucker Act; the "Little Tucker Act" 28 U.S.C. § 1346(a)(2); the APA and the FTCA. *Id.* at 151-54. The Court concluded that persons whose property was seized and lost could not recover money damages under the APA, *id.* at 152, n. 7, but held only that Adeleke had no claim under the remaining statutes. *Id.* at 151-53. Since petitioner is not currently seeking relief under any of those statutes, this Court need not address the question of whether petitioner can recover money

damages under them.  Nonetheless, petitioner must be permitted to develop the record in order to determine whether she, unlike Adeleke, might be able to bring a claim under the Tucker Act, the Little Tucker Act and/or the FTCA.

Moreover, even if petitioner were unable to recover damages for lost property, both her interests and public interests are served by having this Court determine what happened to her property. If the Government were permitted to merely assert that property has been lost, its attorneys and agents would have no incentive to conduct a thorough search. Indeed, in this case, Special Agent MacKizer did not bother to elaborate on the "items of claimed property that were introduced into evidence at trial in the criminal case," even though an exhibit list had been docketed on ECF. *See United States v. Bokel*, No. 04-cr-70018-nkm (W.D. Va.), Docket Entry #49. Moreover, Special Agent MacKizer implied that the exhibits would be held permanently by the United States District Court for the Western District of Virginia, even though he should have known that the exhibits would ultimately be returned to the parties. In fact, the exhibits were returned to MacKizer on September 25, 2006 – exactly one week after he signed his declaration. Id., Docket Entry #133. He either failed to alert AUSA Mantell of this fact, or AUSA Mantell neglected to advise this Court of it. Therefore, even if petitioner has no claim for damages, it is essential that courts permit discovery to ensure that the government's own regulations are followed.

Accordingly, the United States' request to move pursuant to Fed. R. Civ. P. 12 or 56 is denied. The Government is directed to file a responsive pleading within ten (10) days of the date of this Order. *See* Fed. R. Civ. P. 12(a)(4)(A).

Petitioner's motion is denied as premature. To the extent that petitioner seeks to move

11

for judgment on the pleadings, such motion can be filed only after both sides have filed their pleadings. *See* Fed. R. Civ. P. 12(c). Alternatively, to the extent that petitioner seeks to extend her time to conduct discovery, such motion is entirely unnecessary. No initial conference has been held and no discovery schedule has yet been set.

Petitioner's letter dated September 25, 2006 (attached to Petitioner's Motion as Exhibit 1), setting forth various procedural questions, is referred to the Pro Se Office for a response. If petitioner has further procedural questions concerning how to conduct discovery, she may either write to the Pro Se Office at this Courthouse or may call the Pro Se Office at 718-613-2665.

## CONCLUSION

The Government's letter dated September 21, 2006, is construed as a pre-motion conference request, and the Government's request for permission to move to dismiss this action pursuant to Fed. R. Civ. P. 12 or 56 is denied. The United States is directed to file a responsive pleading within ten (10) days of the date of this Order. Petitioner's "Motion for Judgment on the Pleading or Motion for Continuance to Obtain further Testimony" is denied as premature. Petitioner's letter dated September 25, 2006 (attached as Exhibit 1 to the aforementioned Petitioner's Motion) is referred to the Pro Se Office for a response.

**SO ORDERED.**

/s/
SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
February 13, 2007