UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

WEILY L. BOKEL,

                        Plaintiff,        **REPORT AND RECOMMENDATION**
                                                      06 CV 2849 (SLT)(LB)

        -against-

NYPD PROPERTY CLERK DIVISION,
ITS SUCCESSORS AND ASSIGNS; and
THE UNITED STATES OF AMERICA,

                        Defendants.

-----------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

On May 26, 2005, Weily L. Bokel ("plaintiff") filed a motion for return of property pursuant to Federal Rule of Criminal Procedure 41(e), now Rule 41(g),[1] in the Western District of Virginia. On September 19, 2005, the Honorable Norman K. Moon dismissed plaintiff's motion as it was filed in the wrong court. On May 10, 2006, plaintiff filed a second return of property motion, this time in the Southern District of New York, which was transferred to this Court. Plaintiff's motion seeks the return of thirteen items of her property allegedly seized at John F. Kennedy Airport on December 31, 2003. On February 13, 2007, the Honorable Sandra L. Townes found that defendant, the United States, had not adequately accounted for plaintiff's seized property. The matter was referred to me and I held three telephonic conferences to determine what happened to plaintiff's seized property. Defendants have now filed sworn affidavits sufficiently accounting for each item of plaintiff's seized property. Therefore, pursuant to 28 U.S.C. § 636(b), I respectfully recommend that plaintiff's motion for return of property should be dismissed.

---

[1] Fed. R. Crim. P. 41(e) was redesignated Fed. R. Crim. P. 41(g), without substantive change, effective December 1, 2002. See Fed. R. Crim. P. 41 Advisory Committee Note to the 2002 amendments.



## PROCEDURAL HISTORY

Judge Moon dismissed plaintiff's original motion filed in the Western District of Virginia on September 19, 2005, stating that after speaking to the prosecution and defense in plaintiff's underlying criminal case, he "learned that the cash that was not garnished was already returned" to plaintiff, and that the rest of plaintiff's property had been seized at John F. Kennedy Airport and was being held in New York. Bokel v. United States, No. 6:04-CR-70018, slip op. at 1 (W.D.Va. Sept. 19, 2005). Plaintiff filed a new motion in the Southern District of New York, which was transferred to this Court. Plaintiff seeks the return of the following thirteen items of her property allegedly seized upon her arrest at John F. Kennedy Airport on December 31, 2003:

1. Cash, in the amount of $541 (five hundred and forty-one dollar[s] and zero cents);
2. Two checkbooks containing a total of 40 blank checks of a Brazilian Bank, "Banco Itau," bank card of the referred bank;
3. [Plaintiff's][] personal documentation of Brazil, including ID card "Carteira de Identidade," Driver's License "Carteira de Motorista," "Titulo de Eleitor," "CIC," and Carteira do Trabalho";
4. [Plaintiff's][] daughter's Brazilian and US Passport in the name of "Raquel Elizabete Bokel" and "Rachel Elizabeth Bokel";
5. One 24K Gold rope necklace (18") with a jade pendant in "quasi" triangular shape with a 1/4" hole in the upper corner where the rope goes though;
6. The silver rope necklaces (18") with dark blue saphire [sic] pendants one in heart shape and one in butterfly shape with a red stone as the butterfly's "body";
7. A number of children's books in English, Chinese, and Portugese (about 10 in each language. A box of Disney Stories books/tapes set;
8. Eight small stuffed animals (about 3" to 5" each);
9. A couple of hand sized puppets (2" x 5" each);
10. Three videotapes containing recordings of [plaintiff][] and her child;
11. A black personal scripture with [plaintiff's][] name engraved on the front (approximately 5" x 7" x 2");
12. A motorola cellular phone with ground line charger;
13. A new blue car booster seat.

Motion for Return of Property at 2.

After Judge Townes found that the United States had not adequately accounted for plaintiff's

property, <u>Bokel v. NYPD Property Clerk Division et al.</u>, No. 06-CV-2849 (SLT)(LB), slip op. at 1-2 (E.D.N.Y. Feb. 13, 2007), I directed the U.S. Marshals Service to serve process on the N.Y.P.D. Property Clerk, who had not previously been served. I held three telephonic conferences, on April 17, May 9, and July 17, 2007, to determine what happened to plaintiff's property.

After the second telephonic conference on May 9, 2007, the City defendant accounted for the only item of plaintiff's property in its possession, the gold rope necklace, and made arrangements to return the necklace to plaintiff's designated agent. The United States, going beyond the thirteen items detailed in plaintiff's return of property motion, sent plaintiff a spreadsheet listing all property taken from her, including an exposition of the contents of eight bags seized, delineated bags 1B1 through 1B8. <u>See</u> docket entry 37. Some of the property listed on the spreadsheet was returned to plaintiff or her agent and receipts were provided, however some property allegedly returned to plaintiff's criminal defense attorney in West Virginia had not been signed for. I therefore directed the United States to submit an affidavit from someone with personal knowledge regarding the return of plaintiff's property to her criminal defense attorney. I also directed the United States to specify which items of plaintiff's property it still had, which items it would agree to return, and which items it would not return. I further directed the United States to send plaintiff instructions explaining how to retrieve the items it would agree to return.

After the third telephonic conference on July 17, 2007, I directed the City defendant to submit an affidavit from someone with personal knowledge regarding the return of plaintiff's property to plaintiff's designee. The City defendant filed a sworn affidavit by N.Y.P.D. Property Clerk Division Police Officer Kenneth Mackey dated August 23, 2007. The affidavit swears that Officer Mackey arranged for plaintiff's necklace to be sent by certified mail to plaintiff's designated agent, and

attaches a receipt showing that the property was received and signed for by plaintiff's agent on July 19, 2007. See docket entry 42.

To accommodate plaintiff's difficulty in retrieving her property while she remains incarcerated, the United States stated that it would arrange for plaintiff to be transferred to a facility where she could personally receive her property. See Transcript of Civil Cause for Telephone Conference on July 17, 2007 at 13 ("[A]s for the terms of the return, the government has also stated . . . that it can make an accommodation by having Ms. Bokel personally go to a facility, an ICE facility in Norfolk. We will make that arrangement and she can retrieve all of these items . . ."). I directed the United States to submit an affidavit from someone with personal knowledge regarding the return of plaintiff's property, and gave plaintiff time to submit a response to the defendants' affidavits. The United States filed a declaration under penalty of perjury by Special Agent Joseph Palermo of the Federal Bureau of Investigation dated September 17, 2007. The declaration states that Special Agent Palermo was present on August 23, 2007, when "Ms. Bokel was given the opportunity to identify all items seized from her at the time of her arrest that are in the FBI's possession and which the government has agreed to return." See docket entry 43. The declaration attaches a Receipt for Property for the returned items and adds that

> Ms. Bokel identified each of the items listed and signed the bottom of both pages. After the items were identified by Ms. Bokel, they were transferred to the headquarters office of the Department of Homeland Security, Immigrations and Customs Enforcement, located in Fairfax, Virginia. The items will be maintained at that office until such time as Ms. Bokel's deportation matter is resolved and may be retrieved by an authorized person.

Id. ¶ 2.

After the City filed Mackey's sworn affidavit and the United States filed Palermo's

4

declaration under penalty of perjury, plaintiff moved to vacate my July 17, 2007 Order. See docket entry 45. On November 2, 2007, I construed plaintiff's motion to vacate as a motion for reconsideration and denied it as without basis.

Upon review of plaintiff's original motion seeking the return of thirteen items of property seized during her arrest at JFK Airport on December 31, 2003, the sworn affidavit from the City and the sworn declaration from the United States, as well as the spreadsheet attached to Assistant U.S. Attorney Mantell's April 25, 2007 letter to plaintiff, there remained eight items seemingly unaccounted for:

1. Two checkbooks containing a total of 40 blank checks of a Brazilian Bank, "Banco Itau," bank card of the referred bank;
2. [Plaintiff's][] daughter's Brazilian and US Passport in the name of "Raquel Elizabete Bokel" and "Rachel Elizabeth Bokel";
3. The silver rope necklaces (18") with dark blue saphire [sic] pendants one in heart shape and one in butterfly shape with a red stone as the butterfly's "body";
4. Eight small stuffed animals (about 3" to 5" each);
5. A couple of hand sized puppets (2" x 5" each);
6. Three videotapes containing recordings of [plaintiff][] and her child;
7. A motorola cellular phone with ground line charger;
8. A new blue car booster seat.

As the City defendant had returned the only item of plaintiff's property still in its possession, I directed the United States to submit an additional affidavit upon personal knowledge regarding the eight unaccounted-for items. I directed the United States to specifically state its position regarding the whereabouts of each item by November 16, 2007. The United States filed a declaration under penalty of perjury by Special Agent Mark L. MacKizer of the Federal Bureau of Investigation dated November 14, 2007. See docket entry 47. The declaration states that

> As demonstrated by the attached spreadsheet, **the FBI did not take possession of Items 1, 3, and/or 5 though 8** . . . the FBI previously returned to Bokel two stuffed animals that it received . . . and does

5

> not have any other stuffed animals in its possession [Item 4]. . . and the U.S. and Brazilian passports for Rachel Bokel, listed as Item 2 in the Order, were taken into FBI custody and used as exhibits at Bokel's trial . . . [T]he United States does not agree to return them to Bokel.

Id. ¶ 2 (emphasis added).

## STANDARD OF REVIEW

### I. Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rule of Civil Procedure governs a "lack of jurisdiction over subject matter." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000). Federal courts are "duty bound . . . to address the issue of subject matter jurisdiction at the outset." Filetech v. France Telecom S.A., 157 F.3d 922, 929 (2d Cir. 1998). "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that [jurisdiction] exists." Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002) (citing Makarova, 201 F.3d at 113).

### II. Equitable Jurisdiction and Rule 41(g)

In general, the government should return seized property, other than contraband or property in which it has a "continuing interest," to the rightful owner upon the termination of criminal proceedings. United States v. David, 131 F.3d 55, 59 (2d Cir. 1997). A motion seeking the return of such property pursuant to Federal Rule of Criminal Procedure 41(g) that is filed after the conclusion of criminal proceedings, as here, is treated as a claim for civil equitable relief. See Boero

v. Drug Enforcement Admin., 111 F.3d 301, 303 n.1 (2d Cir. 1997) (construing movant's submission as a civil claim where criminal proceedings were no longer pending); Onwubiko v. United States, 969 F.2d 1392, 1397 (2d Cir. 1992) ("[w]here criminal proceedings against the movant have already been completed, a district court should treat a rule 41(e) motion as a civil complaint"). In cases where the property is still in a defendant's possession, the district court has ancillary jurisdiction to order the equitable relief sought: the return of the property to its rightful owner.

The Second Circuit formerly held that the government is liable for money damages "when [it] gives away, loses or destroys a prisoner's property." Mora v. United States, 955 F.2d 156, 160 (2d Cir. 1992). However, in Adeleke v. United States, 355 F.3d 144, 147 (2d Cir. 2004), the Second Circuit repudiated Mora and joined its sister circuits in holding that sovereign immunity deprives the district court of jurisdiction over a plaintiff's due process claim for money damages. In its opinion, the Circuit recognized the potentially harsh ramifications of its holding: "[t]his may leave some aggrieved parties without relief, but that is inherent in the doctrine of sovereign immunity." Id. The Adeleke Court emphasized that

> although we continue to adhere to [] Mora and its progeny insofar as those cases recognize federal equitable jurisdiction to order the return of property pursuant to Rule 41(g) even after the conclusion of criminal proceedings, we here clarify that such equitable jurisdiction does not permit courts to order the United States to pay money damages when, for whatever reason, property is not available for Rule 41(g) return. Such monetary awards are barred by sovereign immunity.

Id. at 151.

## DISCUSSION

Plaintiff maintains that defendants have failed to return her seized property. The City has demonstrated that plaintiff's necklace, the only item it seized from plaintiff, has been returned to plaintiff's designated agent. The Court finds that the United States has: accommodated plaintiff's inability to designate an agent to retrieve her property by transferring her to a facility where she identified her property; returned the property it will return to plaintiff [Item 4, stuffed animals]; adequately accounted for the property still in its possession in which it has a continuing interest [Item 2, passports]; and submitted a sworn declaration that Items 1, 3, and 5 through 8 were never seized from plaintiff. Plaintiff argues that this is insufficient as, by federal regulation 41 CFR § 128-50.101, she is entitled to "a well documented chain of custody" of her property since its seizure, "the location and storage of the property," and "inventory records, including the name (and office) of the receiving party, the agent who processed it in each location (when applicable), the dates, etc." Motion to Vacate Order, docket entry 45, at 4. The Court disagrees.

The City defendant has filed Officer Kenneth Mackey's sworn affidavit, which states that plaintiff's property was sent by certified mail to her designated agent, and attaches a receipt showing that the property was received and signed for on July 19, 2007. In addition, the United States has filed declarations under penalty of perjury by FBI Special Agents Joseph Palermo and Mark L. MacKizer. The Palermo declaration states that "Ms. Bokel was given the opportunity to identify all items seized from her at the time of her arrest that are in the FBI's possession and which the government has agreed to return"—an accommodation when plaintiff was unable to designate an agent to retrieve her property. The Palermo declaration attaches a Receipt for Property for the returned items, upon which "Ms. Bokel identified each of the items listed and signed the bottom of

8

both pages," and adds that each identified item of plaintiff's property is being held by the Department of Homeland Security until plaintiff's deportation is resolved. The MacKizer declaration states "I have reviewed the list of eight items set forth in the Court's Order in this matter, dated November 2, 2007, which items Bokel claims were seized from her at the time of her arrest," and specifies what happened to each of the eight items: "the FBI did not take possession of" [Items 1, 3, and 5 through 8]; "the FBI previously returned" [Item 4, stuffed animals]; and "[T]he United States does not agree to return" [Item 2, passports].

In finding that the United States had failed to adequately account for plaintiff's property, Judge Townes held that the government's "unspecific and conclusory declarations" were "insufficient to provide a factual basis for determining what property has been returned, what property was never seized and what property has been lost." Bokel, No. 06-CV-2849, slip op. at 9. Judge Townes directed that under Fed. R. Crim. P. 41(g), the Court must "receive evidence on any factual issue necessary to decide the motion." Id. (citing Mora, 955 F.2d at 158). The Court conducted three telephonic conferences and has now received specific, sworn declarations from persons with personal knowledge regarding "what property has been returned, what property was never seized and what property has been lost." Bokel, No. 06-CV-2849, slip op. at 9. Although plaintiff argues that this is insufficient, she proffers no contrary evidence.

Under Adeleke, it does not matter whether plaintiff is right and the government lost her property, or whether the United States is right and plaintiff's property was never seized. Since the United States does not have plaintiff's property now, this Court lacks subject matter jurisdiction over the remainder of plaintiff's motion. Whether or not plaintiff is satisfied, the United States has established that "for whatever reason," Items 1, 3, and 5 through 8 are "not available for Rule 41(g)

9

return." Adeleke, 355 F.3d at 151.

Plaintiff's instant motion for return of property should therefore be dismissed. See Wai Hung v. United States, No. 02 CV 6795 (SJ), 2007 WL 1987749, at *2 (E.D.N.Y. July 3, 2007) ("[W]here a petitioner seeks return of property that has become unavailable due to loss or destruction of the property, and the United States has not waived its sovereign immunity against such claims, the claim for return of property must be dismissed."); Rosario v. United States, No. 04 Civ. 910 (NG), 2006 WL 721360, at *3 (E.D.N.Y. March 20, 2006) (as the government is protected form paying monetary awards by sovereign immunity, the Court lacks subject matter jurisdiction over plaintiff's motion for the return of property for property that the government cannot locate).

## CONCLUSION

Accordingly, the Court should dismiss the instant action as moot the for items the government has returned, and should dismiss for lack of subject matter jurisdiction for the items the government does not have.[2]

---

[2] The Court has also received plaintiff's motion to vacate my November 2, 2007 Order directing the United States to submit an affidavit upon personal knowledge specifically stating its position as to each of the eight unaccounted-for items. See docket entry 48. As with plaintiff's motion to vacate my July 17, 2007 Order, I once again construe her motion to vacate as a motion for reconsideration and deny it as there is no basis for reconsideration.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated: December 7, 2007
Brooklyn, New York